Dwight Yellen
Jason Leibowitz
KRISS & FEUERSTEIN LLP
360 Lexington Avenue – 12th Floor
New York, New York 10017
212.661-2900
*Attorneys for Plaintiff*

UNITED STATES DITRICT COURT
EASTERN DISTRICT OF NEW YPORK
------------------------------------------------------------------x
CHEMOIL CORPORATION,                              16 CV **3730**

                  Plaintiff,

    -against-                                         **COMPLAINT**

ALLIED NEW YORK SERVICES, INC. and
TOTAL SPECIALTIES USA INC.,

                  Defendants.
------------------------------------------------------------------x

Plaintiff Chemoil Corporation by its attorneys, Kriss & Feuerstein LLP, for its complaint against the defendants, alleges, upon information and belief:

## PARTIES

1. Plaintiff Chemoil Corporation is a California corporation authorized to conduct business in New York.

2. Defendants Allied New York Services, Inc. is a New York corporation with a place of business located at 462 Seventh Avenue, 17th Floor, New York, New York and 90 S Service Rd, Jamaica, NY 11430.

3. Defendant Total Specialties USA Inc. is a Delaware corporation authorized to conduct business in New York. Its principal place of business is located at 1201 Louisiana Street, Suite 1800,

1

Houston, TX 77002. Its authorized agent for the service of process in New York is CT Corporation System, 111 Eighth Avenue, New York, NY 10001.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) based upon the diversity of the citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,

## FACTS

6. Chemoil Corporation ("Chemoil") agreed to sell fuel to Travelspan Inc. ("Travelspan") at John F. Kennedy International Airport ("JFK") beginning in December, 2013. Under the terms of sale, Chemoil required Travelspan to prepay for any fuel purchases.

7. Total Specialties USA, Inc. ("Total Specialties") supplied Chemoil with fuel at JFK and Allied New York Services Inc. ("Allied") provided into-wing delivery of the fuel from Total to Travelspan on Chemoil's behalf.

8. Allied and Total Specialties have a fuel storage and delivery agreement of which Chemoil is a third party beneficiary.

9. Travelspan provided Chemoil with a flight schedule each week which specified the estimated date of upcoming flights for which they required fuel. Chemoil authorized Total Specialties and Allied to fuel a flight on a flight-by-flight basis. If sufficient funds were on account from Travelspan prior to the scheduled date, Chemoil emailed authorization to Allied which specified the amount of fuel and the specific aircraft to be fueled.

10.  Once the fuel was delivered into the wing of the aircraft, Allied sent Chemoil a copy of the fuel ticket which confirmed the fueling date, the tail number of the aircraft to which fuel was delivered, the flight number, and the gallons dispensed.

11.  In June, 2014 through August, 2014 Total and Allied failed comport with agreed supply and distribution agreements, protocols and standards of commerce, custom and usage in the industry resulting in deliveries of fuel without proper authorization by Chemoil.

12.  **Fueling on 2 June.** Allied fueled Travelspan on June 2, 2014 for 19,339 gallons. Chemoil did not send a fuel authorization to Allied before the fueling took place. Allied did not send Chemoil a copy of the fuel ticket. Total Specialties sent Chemoil an invoice for this fueling on July 1, 2014.

13.  Upon receipt, Chemoil contacted Total and notified them that Chemoil had no record of the fueling, and requested a fuel ticket to confirm that the fueling had taken place. Total Specialties did not provide the fuel ticket (# 247828) until August 13, 2014. Chemoil then billed this fuel to Travelspan on August 14, 2014 using invoice# 16USA0007839 for a total of $59,831.24.

14.  **Fueling on 7 July.** Allied fueled Travelspan on July 7, 2014 for 10,307 gallons. Chemoil did not send a fuel authorization to Allied before the fueling took place. Unaware that Travelspan had already been fueled, Chemoil sent fuel authorization# 6714-1 to Allied for fueling on July 8, 2014, when the airplane was scheduled to depart.

15.  Total Specialties sent Chemoil an invoice on July 9, 2014 for fuel corresponding to fuel ticket# 275108. Chemoil billed this fuel to Travelspan on July 10, 2014 using invoice# 16USA0007094 for a total of $32,426.99.

16.  **Fueling on 14 July.** Allied fueled Travelspan on July 14, 2014 for 12,522 gallons. Chemoil did not send a fuel authorization to Allied before the fueling took place. Allied did not send Chemoil a copy of the fuel ticket until October 17, 2014. Total Specialties sent Chemoil an invoice

on July 29, for fuel corresponding to fuel ticket# 266296. Chemoil billed this fuel to Travelspan on August 6, 2014 using invoice# 16USA0007662 for a total of $38,260.10.

17. **Fueling on 20 July**. Allied fueled Travelspan on July 20, 2014 for 17,203 gallons. Chemoil did not send a fuel authorization to Allied before the fueling took place. Allied did not send Chemoil a copy of the fuel ticket until August 6, 2014.

18. Upon receiving fuel ticket# 285958 from Allied, Chemoil billed this fuel to Travelspan on August 6, 2014 using invoice# 16USA0007664 for a total of $51,890.29.

19. **Fueling on 21 July.** Allied fueled Travelspan on July 21, 2014 for 15,422 gallons. Chemoil did not send a fuel authorization to Allied before fueling took place. Allied sent Chemoil on July 22, 2014 a copy of fuel ticket# 288172 for the July 21, 2014 fueling.

20. After the July 21, 2014 fueling, Allied emailed Chemoil to notify that fueling had taken place without a fuel authorization and requested that a fuel release be sent to retroactively authorize the fuel. This was the first instance in which Chemoil knew Allied having fueled Travelspan without a prior authorization.

21. Due to Chemoil's lack of knowledge concerning the fuelings described in ¶¶ 12 – 19 of this complaint, Chemoil incorrectly believed Travelspan had a credit balance with Chemoil. Chemoil therefore consented to Allied's request and issued the authorization after-the-fact. Fuel authorization# 6957-1 was sent to Allied on July 22, 2014 to cover the fueling which took place on July 21 2014, and Chemoil in turn issued Travelspan invoice# 16USA0007321 for $46,521.70.

22. **Fuelings on 28 July**. Allied fueled Travelspan twice on July 28, 2014 for 16,386 gallons and for 15,105 gallons. Chemoil did not send fuel authorizations to Allied before these fuelings took place. Allied never sent Chemoil copies of the fuel tickets.

23. Total Specialties provided invoices and copies of corresponding fuel tickets# 294511 and 275085 on August 28, 2014 which was the first time Chemoil was advised of these fuelings.

Chemoil billed this fuel to Travelspan on September 23, 2014 using invoices# 16USA0008168 and 16USA0008169 totaling $49,206.99 and $45,362.83, respectively.

24. **The Unauthorized Fuelings**. Exhibit A hereto is a schedule of the unauthorized fuelings (the "Unauthorized Fuelings").

25. Their failure to comport with agreed supply and distribution agreements, protocols, as well as standards of commerce, custom and usage in the industry resulted in deliveries of fuel without proper authorization by Chemoil.

26. Chemoil compensated Total Specialties for all the Unauthorized Fuelings.

27. Allied has been compensated for its services in connection with the Unauthorized Fuelings.

28. Travelspan paid $129,566.48 to Chemoil on account of these Unauthorized Fuelings.

29. Chemoil is still owed $193,933.66 on account of the Unauthorized Fuelings.

FIRST CLAIM FOR RELIEF

30. By their failure to comport with agreed supply and distribution agreements and protocols and standards of commerce and custom and usage in the industry, fuel was delivered without proper authorization by Chemoil.

31. The delivery of fuel without authorization was a breach of contract.

32. Chemoil has been damaged in the amount of $193,933.66.

33. Chemoil has suffered incidental and consequential damages.

34. By reason of the foregoing, Chemoil is entitled to a money judgment against Total Specialties and Allied, jointly and severally, in an amount of at least $193,933.66 to be determined by the trier of fact.

## SECOND CLAIM FOR RELIEF

35. By their wrongful acts concerning Chemoil and the Unauthorized Fuelings, Total Specialties and Allied were unjustly enriched at the expense of Chemoil.

36. Chemoil has suffered incidental and consequential damages.

37. By reason of the foregoing, Chemoil is entitled to a money judgment against Total Specialties and Allied, jointly and severally in an amount to be determined by the Court but reasonably believed to total in excess of $193,933.66.

**WHEREAS**, plaintiff Chemoil demands judgment against defendants Allied and Total Specialties, jointly and severally, in an amount no less than $193,933.66 plus incidental and consequential damages; pre-judgment interest; attorney's fees, costs and disbursements; and such other relief as this court may deem just and proper.

Dated: New York, New York
June 17, 2016

KRISS & FEUERSTEIN LLP

By: _____
Dwight Yellen
Jason Leibowitz

Attorneys for Plaintiff
*Chemoil Corporation*
360 Lexington Avenue – 12th Floor
New York, New York 10017
212.661-2900